FRANK S. HOVER v. CHICAGO, ROCK ISLAND AND GULF RAILWAY
COMPANY.

Decided October 14, 1905.

**1.—Testimony—Supporting Circumstances.**

Defendant's inspector of engines and tenders was allowed to testify that he inspected the tender in question shortly prior to the wreck, and that he knew at the time that his son, who was killed in the wreck, would go out as fireman on said engine on its next trip. Defendant was also allowed to prove by the same witness and others that the method of inspection in use by defendant was the same in use among all up-to-date railways. To this testimony it was objected that it was incompetent, and the inspector not having been impeached or contradicted his testimony could not thus be supported. Held, these were circumstances relevant to the issue of negligence charged, and in the absence of criticism of the method of inspection could not constitute error.

**2.—Facts—No Evidence of Negligence.**

Facts considered, and held, no phase of the proof would have authorized a verdict for plaintiff.

Appeal from the District Court of Hartley. Tried below before Hon. Ira Webster.

*Tatum & Stepp* and *Simmons & Clendenen,* for appellant.—The court erred in permitting over objection of plaintiff, the testimony of witness R. A. Stewart, to the effect that witness was the inspector of locomotives and tenders at Dalhart at the date of the wreck, that he inspected the tender in question on the day before the wreck by which plaintiff was injured occurred, that witness's son John Stewart was the fireman on said train and was killed in said wreck, and that when

witness inspected said engine and tender he knew that his said son would go out on said engine on its next trip as fireman.

The court erred in permitting the witnesses R. A. Stewart, R. L. Stewart and J. A. McDonald to testify over objection of plaintiff that the manner of inspection of locomotives and cars of defendant's road at Dalhart, Texas, was the same as that of all up-to-date railroads in the country, because there was no evidence that the inspectors of up-to-date railroads were ordinarily prudent persons, and because it was not permissible to show that an act is not negligence by evidence that other persons are accustomed to do the same thing in the same way, in the absence of proof that such other persons are ordinarily prudent. Gulf, C. & S. F. Ry. Co. v. Evansich, 61 Texas, 6; Crocher v. Schureman, 7 Mo. App., 359; Houston & T. C. Ry. Co. v. Jones, 16 Texas Civ. App., 180; Gulf, C. & S. F. Ry. v. Roland, 82 Texas, 171; Gulf, C. & S. F. Ry. v. Smith, 87 Texas, 358; Weatherford, M. W. & N. W. Ry. v. Duncan, 88 Texas, 614; Missouri, K. & T. Ry. v. Johnson, 92 Texas, 383.

*N. H. Lassiter, Robert Harrison* and *D. B. Hill,* for appellee.—It was proper to admit the evidence, because it tended to show whether or not R. A. Stewart, the inspector, did his work carefully.

It was proper to admit the testimony, as it tended to show to the jury whether or not the character of inspection made was such inspection as a man of ordinary care would have made. St. Louis & S. F. Ry. Co. v. Nelson, 49 S. W. Rep., 710.

CONNER, CHIEF JUSTICE.—Appellant sued appellee to recover damages for personal injuries received as a result of a wreck of one of appellee's freight trains, upon which appellant was a brakeman at the time. Appellant was at his post of duty upon the top of the fourth car behind the engine, the tender of which was derailed by a broken flange on one of its wheels. The derailment of the tender caused a like result to the cars, and appellant was thrown some fifty feet from the track and injured. Insofar as it is material to state, the negligence alleged was in substance: First, that appellee furnished the defective wheel with a broken or cracked flange; second, that the defect could and would have been discovered, if unknown, upon proper inspection, which had not been given; third, that the engineer discovered the defect in time to have avoided the wreck and was guilty of negligence in failing to do so.

The trial resulted in a verdict and judgment for appellee, from which an appeal has been prosecuted.

Disposing of the assignments of error in the reverse order of their presentation, we first notice the objection made to the action of the court in permitting R. A. Stewart, who was appellee's inspector of engines and tenders at Dalhart, Texas, and who inspected the tender in question shortly prior to the wreck, to testify over appellant's objection that John Stewart, a son of witness, was a fireman on said engine, that he was killed in the wreck, and that witness knew at the time he made the inspection stated that his said son would go out on said engine as fireman on its next trip. The objection was that the

witness not having been contradicted or impeached, his testimony could not be thus supported.

The same witness, as also J. A. McDonough and R. L. Stewart, was permitted to testify that the method of inspection in use by the appellee at its shops in Dalhart was the same kind and character of inspection as is in use among all up-to-date railways in the country, to which it was objected in substance that the testimony was incompetent. We find no error in the rulings thus complained of. The evidence shows without contradiction that the witness R. A. Stewart was an exceptionally competent car inspector of long experience. He detailed minutely the method and manner of the inspection given the tender in question the evening before the accident; and the fact that he knew that his son was to go out as fireman upon that engine, and the fact, if such it was, that the inspection was the same in kind and character as that in use among the railways of the country, were circumstances, we think, relevant to the issue of negligence charged in this particular. It is true that due care in inspection could not be established by showing merely that the inspection had been in agreement with a custom of railways, but where, as here, no criticism is urged to the manner or method of inspection shown, it certainly can not constitute error to also show that it was in accord with generally approved methods.

All other assignments of error relate to the action of the court in giving and refusing charges. We deem it unnecessary to discuss the several questions presented under these assignments. They have all been carefully considered, and we have concluded that they should be overruled on the ground that the errors, if any, are immaterial because of our further conclusion that there is no phase ·of the proof that would have authorized a verdict in appellant's favor. In addition to the facts already stated, it was shown without contradiction that on the evening before the accident, R. A. Stewart, a competent inspector of engines and tenders, made a careful inspection of the wheel causing the wreck; that he failed to discover the defect in the flange causing the··tender's derailment. A. A. Hilton testified without contradiction that he was vice president and general manager of the Chicago Car Wheel and Foundry Company, that he manufactured the particular wheel in controversy, minutely describing the composition, manufacture and tests thereof, and said they were all "the best on earth." Fred O. Bonnell also testified to the effect that he was appellee's engineer of tests; that it was his duty to prescribe the size, weight and composition·of car wheels purchased by appellee. He described the test and stated that one wheel out of every fifty purchased by appellee was subjected to this test; that he had made a mechanical analysis of the broken pieces of flange shown to him, and this analysis showed the proper component parts of the car wheel purchased by appellee as prescribed by the witness; that the metal was properly chilled; that the crack which was shown by the evidence was produced by the contraction of the metal; that the crack might be visible and it might not; that it is a defect that has never been detected by inspection, to his knowledge; that in his opinion it is utterly impossible to discover such a defect with the naked eye; that it would probably be discovered by

taking the wheel off and examining the defect with a magnifying glass. While the evidence tended to show that the broken flange presented in one or more places the appearance of an old crack, we find no testimony whatever sufficient to sustain a finding that the defect in the flange was such as should have been discovered by the exercise of ordinary care. In argument, some force is attached to the statement of the witness that but one wheel out of every fifty purchased was subjected to the prescribed test of appellee's engineer of tests. No proof was offered in behalf of appellant that other or further test was necessary or usual, and no evidence even tending to show that the customary test was not applied to the very wheel in controversy.

The only remaining ground of negligence as charged was the failure of the engineer to stop the train after discovering the danger. W. S. Ford, who was called as a witness for plaintiff testified that he was the locomotive engineer operating the engine in question at the time; that he was on the tank steps just before the wreck occurred; that he had discovered that something was wrong and was trying to locate it; that he heard a noise that was a little different from what he was used to, and thought to see what it was. The following language of this witness is pertinent on this point: "As soon as I heard the noise, I tried to locate it and couldn't, and I started to get down on the tank steps, and did get down on the step, but before I could get in a position to look to see, I saw some dust flying and I made up my mind that something was wrong, and I started back to stop the engine. I suppose all of this was done in less time than it takes to tell it. The wreck occurred right after I got back in the cab." Appellant himself testifies as follows: "I was at that time (at the time of the wreck) on the fourth car from the engine. I was occupying that position under the orders of the conductor. He told me to watch the first six cars in the train, that he wanted to make a good run. He wanted me to watch out for hot boxes. After I saw the dust flying, the next thing I saw after I came to was the wreck. When I came to myself, I was about fifty feet from the right of way and about sixty feet from where I was at the time I saw the dust flying." The evidence otherwise shows that the train was making about its usual speed of twenty-five miles an hour, and we conclude that there is scarcely a suggestion of negligence on the part of the engineer in failing to stop his train.

We think, after careful consideration of all the evidence that the judgment must be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.